IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

ORBITAL PUBLISHING GROUP, INC., a
New York corporation, and LIBERTY
PUBLISHERS SERVICE, INC., a New York
corporation,

Civ No. 1:15-CV-00480-CL

**REPORT &
RECOMMENDATION**

           Plaintiffs,

    v.

BRIDGET WELLS, individually, and
PERIODICAL WATCHGUARD, LLC., a
North Carolina limited liability company,

           Defendants.

CLARKE, Magistrate Judge.

Plaintiffs Orbital Publishing Group, Inc. ("Orbital") and Liberty Publishers Service, Inc. ("Liberty") allege Defendants Bridget Wells ("Wells") and Periodical Watchguard, LLC ("Periodical Watchguard") tortiously interfered with their magazine subscription business by disseminating false and harmful information about their business practices to magazine publishers, banks, and governmental agencies across the country. Currently before the court is Defendants' Motion to Dismiss (#9) and their related Request for Judicial Notice (#12). For the reasons set forth below, both should be GRANTED.

## BACKGROUND

### I.        Facts Alleged In The Complaint

The following allegations come from Plaintiffs' Complaint (#1).  For the limited purpose of ruling on Defendants' motion to dismiss, the Court assumes these allegations are true and draws all reasonable inferences in Plaintiffs' favor.

Plaintiffs are former independent magazine subscription agents who marketed and sold magazine subscriptions to consumers through direct mail. Compl. ¶¶ 1, 12. Orbital was incorporated in New York and started doing business in 2010. Compl. ¶ 2. It had places of business in Reno, Nevada and Medford, Oregon.  Compl. ¶ 2. Orbital ceased operations in 2012 because it could not maintain banking relationships in Oregon. Compl. ¶ 2.  Liberty, a New York corporation, took over business once Orbital ceased operations. Compl. ¶ 3. It had a place of business in Medford, Oregon. Compl. ¶ 3. Liberty stopped doing business in 2014 because it could not maintain banking relationships in Oregon. Compl. ¶ 3.

Wells is an individual who resides in Mint Hill, North Carolina. Compl. ¶ 4.  Wells founded Periodical Watchguard in 2006. Compl. ¶ 5. Periodical Watchguard is a North Carolina limited liability company that was purportedly established to help publishers identify fraudulent sales and educate consumers on scams. Compl. ¶¶ 5-6.

In 2010, Wells and Periodical Watchguard initiated a campaign to disparage Plaintiffs and divert their business to entities in which Wells had an interest. Compl. ¶¶ 18-19. They falsely informed publishers, banks, state attorney generals, and other government agencies that Plaintiffs were defrauding consumers. Compl. ¶¶ 10, 18. Periodical Watchguard's website identified Orbital as a "rogue seller" engaged in a direct mail scam. Compl. ¶ 21. Wells encouraged publishers to take steps to ensure their magazines were not sold through Plaintiffs. Compl. ¶ 22.

She noted that Plaintiffs' solicitations generally come from White City, Oregon, where two clearing firms used by Plaintiffs are located. Compl. ¶ 21. In January 2015, Wells conducted a seminar in New York City, entitled "Fraud/Bogus Renewal/Unauthorized Sellers: Lunch with an Expert," where she repeatedly referred to Plaintiffs as frauds. Compl. ¶¶ 25-27. Wells advised attendees to contact the U.S. Postal Service to put an end to Plaintiffs' purported mail fraud. Compl. ¶ 29. She also encouraged them to notify their Attorney Generals if they received a solicitation from Plaintiffs and to avoid doing business with companies associated with Plaintiffs. Compl. ¶¶ 30-31.

At Wells' urging, Attorney Generals across the country received baseless complaints about Plaintiffs. Compl. ¶ 39. Wells personally contacted multiple Attorney Generals about Plaintiffs' business practices. Compl. ¶ 40. The Attorney Generals opened investigations into Plaintiffs and companies with whom they do business. Compl. ¶ 43. These investigations adversely affected Plaintiffs' business relationships. Compl. ¶ 45.

Wells contacted Plaintiffs' banks and incorrectly informed them that Plaintiffs were laundering money and defrauding customers. Compl. ¶ 47. She encouraged others to contact Plaintiffs' banks with claims of fraud as well. Compl. ¶ 48. As a result of Wells' conduct and incitement, the banks terminated Plaintiffs' accounts. Compl. ¶ 51.

## II.      Jurisdictional Evidence Filed By Affidavit

The parties submitted the following evidence to assist the Court in its jurisdictional analysis. See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004) (courts look to pleadings and affidavits to determine whether personal jurisdiction is appropriate).

Plaintiffs submit evidence that Defendants reached into Oregon in the following ways. First, Wells testified telephonically in a Jackson County Circuit Court case involving Customer Access Services, Inc. Lennon Decl. Ex. D. Plaintiffs identify Customer Access Services as one of their vendors but provide no evidentiary support for this association. Second, Defendants sent cease and desist letters to Oregon. Lennon Decl. Ex. F; Wells Decl. ¶ 5. Specifically, on September 18, 2014, Wells sent a letter to Orbital's P.O. Box in White City, Oregon. Writing on behalf of a publisher, Wells demanded that Orbital "immediately cease and desist from all solicitations using [the publisher's] brands[.]" Lennon Decl., Ex F., at 4. Third, Plaintiffs allege that Defendants corresponded with Plaintiffs' Oregon-based banks. Plaintiffs do not offer any evidence of these contacts. Nor do they identify what specific banks are at issue. In response, Wells declares that "to the best of [her] knowledge, [she has] never contacted an Oregon bank about Plaintiffs." Wells Decl. ¶ 5.

Finally, Wells corresponded with the Oregon Department of Justice (the "DOJ"). Beginning in 2013, Wells forwarded the DOJ's Chief Financial Fraud Investigator, Geoffery Darling, copies of cease and desist letters; a copy of a presentation she gave in New York about Plaintiffs; and e-mail chains between Defendants, clearinghouses, and publishers discussing possible fraudulent activity. Lennon Decl. Ex. E, at 1-34, 43-60. She also introduced Darling to a retired U.S. Postal Inspector who worked with Defendants on an investigation of Plaintiffs in Nevada, and representatives of publishers and fulfillment houses with concerns about Plaintiffs' practices. Lennon Decl. Ex. E, at 35-39, 42. She updated Darling on cases involving or affecting Plaintiffs. Lennon Decl. Ex. E, at 40. Wells also spoke with DOJ representatives over the phone about its investigation of Plaintiffs. Wells Decl. ¶ 6. In 2015, Wells agreed to testify as an expert witness in the DOJ's civil racketeering case against Plaintiffs. Wells Decl. ¶ 6. However, the

case never went to trial. Wells Decl. ¶ 6. Instead, Plaintiffs settled with the DOJ: agreeing to pay over $3 million, create a restitution fund, and be "permanently prohibited" from "engaging in the magazine or newspaper subscription business." Supp. Kalmanson Decl. Ex. 1, at 12-19.

## STANDARD

Federal courts may exercise personal jurisdiction over a non-resident defendant where the state's long-arm statute confers jurisdiction over the defendant and the exercise of jurisdiction does not violate due process. Data Disc. Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1286 (9th Cir. 1977). Because Oregon law confers jurisdiction over an out-of-state defendant that is coextensive with due process, the court need only analyze whether the exercise of jurisdiction comports with due process. Gray & Co. v. Firstenberg Mach. Co., 913 F.2d 758, 760 n.1 (9th Cir. 1990). The plaintiff bears the burden of proving a prima facie case that jurisdiction exists over the defendant. Schwarzenegger, 374 F.3d at 800 ("Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate.").

## DISCUSSION

As a threshold matter, Defendants ask (#12) the court take judicial notice of complaints filed against Plaintiffs by the states of Oregon, New York, Texas, Wisconsin, and Minnesota. Plaintiffs do not oppose Defendants' request. Under Federal Rule of Evidence 201(b)(2), this court "may judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Because the authenticity of the submitted complaints is "beyond reasonable controversy[,]" the court should grant Defendant's request for judicial notice. Rivera v. Philip

Morris, Inc., 395 F.3d 1142, 1151 (9th Cir. 2005) (quoting FED. R. EVID. 201 Advisory Committee note).

Turning to the substance of the present motion, Defendants identify multiple alleged defects in Plaintiffs' suit. They move to dismiss (1) for lack of personal jurisdiction; (2) for improper venue[1]; (3) under Oregon's Anti-Strategic Lawsuits Against Public Participation ("SLAPP") statute, (4) based on the statute of limitations, and (5) for failure to state a claim. In response, Plaintiffs make contradictory representations about the nature and purpose of this suit. In order to establish personal jurisdiction, they contend that Defendants' contacts with the forum state — namely, Wells' communications with the DOJ — form the basis of this litigation. Simultaneously, in order to avoid the application of Oregon's Anti-SLAPP statute, Plaintiffs assert that Plaintiffs' claim is not related to Defendants' statements to the DOJ. Plaintiffs cannot have it both ways. As discussed in detail below, if this suit arises out of Defendants' correspondence with the DOJ, then it is subject to dismissal under Oregon's Anti-SLAPP statute. If this suit is not based on Defendants' contacts with the DOJ, then this Court lacks personal jurisdiction over Defendants. Either way, dismissal is appropriate.

**I.      Personal Jurisdiction**

Due process requires a court to have general or specific jurisdiction over a defendant to avoid "offend[ing] traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945) (citations omitted). A court has general jurisdiction where the defendant's contacts with the forum are "substantial" or "continuous and systematic." Decker Coal Co. v. Commonwealth. Edison Co., 805 F.2d 834, 839 (9th Cir. 1986). Plaintiffs assert this court has specific, not general, jurisdiction over Defendants. A court has specific jurisdiction over a defendant if "there is a

---

[1] Alternatively, Defendants ask the court to transfer venue to the Western District of North Carolina.

strong relationship between the quality of the defendant's forum contacts and the cause of action." Id. Courts apply the three-part "minimum contacts" test to determine whether specific jurisdiction comports with due process. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006). The test is satisfied when:

> (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.

Id. (quoting Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000)). Plaintiffs bear the burden of satisfying the first two prongs of the test. Id. Defendants bear the burden on the third prong. Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988).

     A.     Purposeful Availment

In the context of tort cases like this one, courts of the Ninth Circuit employ a three-part "effects" test to determine whether the first prong of the "minimum contacts" test is satisfied. Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002). As set forth in Calder v. Jones, 465 U.S. 783 (1984), the "effects" test "requires that "the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Id. "The requirement is but a test for determining the more fundamental issue of whether a 'defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.'" Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Here, Plaintiffs contend that Defendants purposefully availed themselves of Oregon's jurisdiction by: (1) testifying telephonically in a Jackson County Circuit Court case; (2) sending cease and desist letters to White City, Oregon; (3) corresponding with Plaintiff's Oregon-based banks; and (4) corresponding with the forum state's DOJ. The Court will apply the "effects" test to each alleged contact in turn.

i.    *Expert Testimony in State Case Involving Plaintiffs' Vendor*

First, Plaintiffs argue that Defendants purposefully availed themselves of Oregon's jurisdiction when Wells provided expert testimony over the telephone in a Jackson County Circuit Court case involving one of Plaintiffs' vendors, Customer Access Services Inc. Wells has submitted a declaration stating that "the case did not involve these Plaintiffs." Wells Decl. ¶ 5. However, Plaintiffs point out multiple references to their business in the record. For instance, Wells testified that some consumers never received the magazines they purchased through Orbital. Lennon Decl. Ex. D, at 9.

The Court should find Wells' testimony insufficient to sustain jurisdiction for two reasons. First and foremost, Wells' testimony is absolutely privileged under Oregon law. Wollam v. Brandt, 154 Or.App. 156, 162 (1998) (statements made in a judicial proceeding are absolutely privileged from ensuing tort actions). This privilege is necessary to ensure that witnesses speak freely without fear of an action being brought against them later. Id. Second, the bulk of Wells' testimony discussing Plaintiffs was elicited by Plaintiffs' own attorney, who happened to represent the vendor. Lennon Decl. Ex. D. Indeed, opposing counsel objected to Plaintiffs' counsel's line of questioning regarding Orbital's business as "far afield from anything pertinent" to the case. Lennon Decl. Ex. D, at 7.   The Court should view this purported contact with skepticism given Plaintiffs' counsel's role in creating it. It is questionable whether the referenced

testimony is solely attributable to Defendants' actions. Roth v. Garcia Marquez, 942 F.2d 617, 621 (9th Cir. 1991) (the purposeful availment requirement turns on whether the defendant's contacts are attributable to his own actions).

  *ii. Cease and Desist Letters*

  Next, Plaintiffs contend that Defendants purposefully availed themselves of jurisdiction in Oregon by mailing cease and desist letters into the state. "A cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1208 (9th Cir. 2006) (citing Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc. 148 F.3d 1355, 1361 (Fed. Cir. 1998)). However, a letter may serve as the basis for jurisdiction where it is "abusive, tortious, or otherwise wrongful." Id. at 1209. For instance, in Bancroft & Masters, Inc., 223 F.3d at 1087, the Ninth Circuit upheld jurisdiction based on a cease and desist letter allegedly sent to wrongfully interfere with and misappropriate the plaintiff's domain name. Here, there are no specific allegations or evidence that Defendants sent its letters for a wrongful purpose. The letters appear to merely notify the recipient of a dispute, and set forth various demands to resolve it. Accordingly, Defendants' letters are not "contact[s] that would, if considered alone, justify the exercise of personal jurisdiction." Yahoo! Inc., 433 F.3d at 1209.

  The Court notes that cease and desist letters facilitate dispute resolution outside of court. "There are strong policy reasons to encourage [them.]" Id. at 1208. A claimant would have little incentive to notify its adversary of legal issues prior to filing suit, if such notice was enough to expose the claimant to jurisdiction in the adversary's home state. Id.

/ / /

/ / /

    *iii. Correspondence with Plaintiffs' Banks*

   Third, Defendants challenge Plaintiffs' allegation that Wells purposefully availed herself of the forum state by contacting Plaintiffs' Oregon financial institutions. Wells has submitted a declaration stating "to the best of [her] knowledge, [she has] never contacted an Oregon bank about Plaintiffs." Wells Decl. ¶ 5. The party asserting jurisdiction bears the burden of establishing challenged jurisdictional facts. <u>Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.</u>, 551 F.2d 784, 787 (9th Cir. 1977). In the face of Wells' declaration, Plaintiffs cannot "simply rest on the bare allegations of [their] complaint[.]" <u>Id.</u> They are "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." <u>Id.</u> Plaintiffs have failed to do so. They do not offer any affidavits or other evidence to contradict Wells' assertion. With no showing that Defendants contacted Oregon banks, the Court cannot find personal jurisdiction on this basis.

    *iv. Communications with the Oregon DOJ*

   Finally, Plaintiffs claim that Defendants purposely availed themselves of the forum state by corresponding with the Oregon DOJ. These communications satisfy the three prongs of <u>Calder</u>'s "effects" test. There is no dispute that Defendants intended to e-mail and call the DOJ. These communications were directed at Oregon. They related to Defendants' business practices in the forum state and were made to the state's DOJ. <u>Bancroft & Masters</u>, 223 F.3d at 1087 (<u>Calder</u>'s express aiming requirement is satisfied when "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."). It was foreseeable Plaintiffs would be harmed by Defendants' alleged misrepresentations to the DOJ, and that some of this harm would occur within the DOJ's domain. See <u>Brayton Purcell LLP v. Recordon & Recordon</u>, 606 F.3d 1124, 1131 (9th Cir. 2010)

(the brunt of the harm need not be suffered in the forum state in order for the third element to be satisfied).

Defendants argue the Supreme Court's recent decision in Walden v. Fiore, 134 S.Ct. 1115 (2014), counsels against a finding of purposeful availment on this basis. There, the Supreme Court held that a Nevada district court could not exert jurisdiction over a Georgia police officer who seized money from a Nevada resident in a Georgia airport. Id. at 1119-20, 1126. The Court explained that the proper focus for personal jurisdiction is "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Id. at 1122. No matter how significant, a plaintiff's or third party's connection with the forum state is not sufficient on its own to establish jurisdiction over an out-of-state defendant. Id. Defendants interpret this to mean that their communications with the DOJ, a third party, are not sufficient to establish jurisdiction. The Court disagrees. In Walden, "[n]one of [the defendant's] challenged conduct had anything to do with [the forum state] itself." Id. at 1125. The Court cannot say the same here. Defendants alleged misconduct did not merely affect or tangentially involve a third party with links to the forum state. Rather, Plaintiffs allege that Defendants themselves contacted the forum state. There is evidence that Defendants reached into Oregon by corresponding with the DOJ about Plaintiffs' activities here. Therefore, Walden's holding is not applicable. The Court should find that Defendants purposefully availed themselves of litigation in Oregon when they repeatedly contacted the DOJ.

 B.     Claim Arising From Defendants' Forum-Related Activities

Having determined that Defendants purposefully availed themselves of the forum state, the Court turns to the second prong of the "minimum contacts" test. In order to secure personal jurisdiction, "the plaintiff's claim must be one which arises out of or relates to the defendant's

forum-related activities." <u>Menken v. Emm</u>, 503 F.3d 1050, 1058 (9th Cir. 2007). Plaintiffs' tort claim frames this inquiry.[2] They must show that they would not have suffered their complained-of injury — damage to their business relationships — but-for Defendants' correspondence with the DOJ. <u>Id.</u> In <u>Dole Food Co.</u>, 303 F.3d at 1114, the Ninth Circuit called it "obvious" that Dole's fraud claim arose directly out of the defendants' contacts with the forum state of California. Dole claimed that foreign defendants fraudulently induced Dole into unfavorable contractual arrangements. <u>Id.</u> at 1107-08. The defendants' contacts with California were comprised of multiple direct communications with Dole's decision-makers in California about the at-issue contracts. <u>Id.</u> at 1112-13. The same allegations that supported Dole's claim also demonstrated Defendant's minimum contacts with the forum state.

Reading Plaintiffs' Complaint together with their jurisdictional evidence, and taking all uncontroverted allegations as true, it is reasonable to assume that Plaintiffs' business in Oregon would have continued but-for Defendants' allegedly deceptive correspondence with the DOJ. See <u>Schwarzenegger</u>, 374 F.3d at 800 (uncontroverted allegations in the complaint must be taken as true and conflicts between affidavits must be resolved in the plaintiff's favor). Plaintiffs have established that Defendants' contacts with Oregon are "integral and essential parts" of the alleged business interference on which they base their suit. <u>Id.</u> at 1114. There is a sufficient nexus between Defendants' contacts and Plaintiffs' claim for personal jurisdiction.

<u>C.</u>    <u>Reasonableness</u>

Finally, the Court must determine whether it would be reasonable to exert personal jurisdiction over Defendants. In doing so, the Court will presume reasonableness unless

---

[2] The elements of the tort of intentional interference with business relations are the following: "(1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages." <u>McGanty v. Staudenraus</u>, 321 Or. 532, 535 (1995).

Defendants present a "compelling case" to the contrary. Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995) (courts should "presume that an otherwise valid exercise of specific jurisdiction is reasonable"); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985) (a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."). Courts in the Ninth Circuit consider seven factors to determine whether the exercise of jurisdiction is reasonable:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Dole Food Co., 303 F.3d at 1114. The Court will balance and weigh all seven factors; none is dispositive. Ziegler v. Indian River County, 64 F.3d 470, 475 (9th Cir.1995).

With respect to the first factor, the Court has already concluded Defendants purposely directed their actions at Oregon. This finding does not, however, necessitate the conclusion that jurisdiction is reasonable. Instead, in Dole Food Co., 303 F.3d at 1115, the Ninth Circuit found purposeful injection where "[not] only did [the defendants] know that their scheme would injure [the plaintiff], which they knew had its principal place of business in California, but they also engaged in repeated communications with [the plaintiff] in California in furtherance of their alleged scheme." Similarly, here, Plaintiffs allege that Defendants knowingly reached out to the forum state's DOJ in order to injure Plaintiffs' business in the state. The purposeful interjection factor weighs in favor of jurisdiction.

The second factor weighs slightly against jurisdiction. Defendants are residents of North Carolina and would be burdened to travel to Oregon. Though the Court is sympathetic to

Defendants, this burden would not be substantial thanks to advances in transportation and telecommunications. Menken, 503 F.3d at 1060.

The third and fourth factors weigh in favor of jurisdiction. There is no apparent conflict between North Carolina and Oregon regarding sovereignty. The Complaint does not allege that Plaintiffs conduct any business in Defendants' home state of North Carolina. North Carolina has little apparent interest in the present tort action.  Meanwhile, Oregon has a strong interest in providing a forum for businesses that are tortuously injured within its borders. See Dole Food Co., 303 F.3d at 1115-16.

As for the fifth factor, courts consider the location of possible witnesses and evidence in order to evaluate the efficiency of the forum. Neither side presents pertinent information for this inquiry. Rather than speculate, the Court finds this factor to be neutral.

The sixth factor — convenience to the plaintiff — is not of significant importance. Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 129 (9th Cir. 1995), holding modified by Yahoo! Inc., 433 F.3d 1199. The Ninth Circuit has noted it only "nominally remains part of" the reasonableness test. Id. Therefore, it has little to no bearing on this Court's analysis.

The seventh and final factor in the reasonableness test is the existence of an alternate forum. This element comes into play, however, "only when the forum state is shown to be unreasonable." CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1080 (9th Cir. 2011). Defendants have not made that showing. On the whole, Defendants have not carried the heavy burden of presenting a compelling case against jurisdiction. Ballard, 65 F.3d at 1502. The Court "can only conclude therefore that an exercise of personal jurisdiction over [Defendants] would be reasonable." Id.

D.    Conclusion

In sum, Plaintiffs contend that Defendants reached into the forum state in four separate ways. Just one of these alleged contacts — Defendants' communications with the DOJ — supports the exercise of personal jurisdiction. Plaintiffs have demonstrated that Defendants intentionally contacted state officials and made comments expressly aimed toward Plaintiffs' activities in Oregon in order to harm their reputation here. Defendants should have reasonably anticipated being hauled into court in Oregon to defend the truthfulness of their statements. Schwarzenegger, 374 F.3d at 803.

This conclusion hinges on Plaintiffs' showing under the second prong of the "minimum contacts" test. Personal jurisdiction is appropriate only if Plaintiffs' tort claim arises from Defendants' correspondence with the DOJ. As discussed below, Plaintiffs undermine their showing under this important requirement in order to avoid the application of a statutory basis of dismissal.

## II.    Oregon's Anti-SLAPP Statute

Defendants move to dismiss Plaintiffs' interference claim under Oregon's Anti-SLAPP statute, Or. Rev. Stat. § 31.150, et seq. "Anti–SLAPP statutes are designed to allow the early dismissal of meritless lawsuits aimed at chilling expression through costly, time-consuming litigation." Northon v. Rule, 637 F.3d 937, 938 (9th Cir. 2011) (quoting Gardner v. Martino, 563 F.3d 981, 986 (9th Cir. 2009)). They "guard public participation in discussion of matters of public concern." Id. at 939. Under Or. Rev. Stat. § 31.150(2), a defendant may make a special motion to strike a civil claim that arises out of:

> (a) Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law;

    (b) Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;

    (c) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or

    (d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

The defendant carries the initial burden of showing that the challenged claim falls within one of these categories. Or. Rev. Stat. § 31.150(3). If the defendant does so, the burden shifts to the plaintiff "to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case." Or. Rev. Stat. § 31.150(3).

Defendants make a prima facie case that the present suit arises out of a protected activity: Defendants' communications with the DOJ. Plaintiffs' own argumentation and evidence supports this conclusion. As discussed above, Plaintiffs submit evidence that Wells alerted the DOJ to concerns about Plaintiffs' business practices and corresponded with the DOJ throughout its ensuing investigation. Plaintiffs contend that Defendants' contacts with the DOJ gave rise to their present tort claim and, therefore, are sufficient to establish personal jurisdiction over them. Pls.' Resp., at 19-20. Plaintiffs back-peddle on that assertion, however, in the context of the Anti-SLAPP statute. They maintain that their intentional interference with business relations claim is primarily based on Defendants' statements to members of the publishing industry. If that is true — if Defendants' contacts with the DOJ were not "integral and essential parts" of the alleged business interference on which they base their suit — then this Court does not have personal jurisdiction over Defendants. Dole Food Co., 303 F.3d at 1114. The second prong of the "minimum contacts" test is not met, and this Court cannot entertain Plaintiffs' suit.

Alternatively, if Plaintiffs' tort claim stems from Defendants' contacts with the DOJ, dismissal is appropriate because Plaintiffs fail to meet their burden under Or. Rev. Stat. § 31.150(3). In the face of Defendant's prima facie showing that Plaintiffs' case arises out of a protected statement, Plaintiffs do not offer "substantial evidence" to support the merits of their claim. Or. Rev. Stat. § 31.150(3). Instead, Plaintiffs recount their generalized pleadings. They allege that Defendants are disseminating false information about Plaintiffs in order to put them out of business. This is not a sufficient showing to defeat a motion to strike under Oregon's Anti-SLAPP law.

## RECOMMENDATION

Plaintiffs represent that the present suit arises from Defendants' contacts with the DOJ in one context, but contradict that assertion in their opposition to a different proffered basis of dismissal. The Court need not sort out this confusion because, regardless of whether the present suit arises from Defendants' correspondence with the DOJ, dismissal is appropriate. Oregon's Anti-SLAPP statute bars the action if it arises from Defendants' statements to the DOJ; and the Court lacks personal jurisdiction if Plaintiffs' claim does not. As such, Defendants' Motion to Dismiss (#9) and Request for Judicial Notice (#12) should be GRANTED.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. FED. R. CIV. P. 72. If objections are filed, any response is due within fourteen (14) days after being served with a copy of the objections. Id.

DATED this _____ day of December 2015.

MARK D. CLARKE
United States Magistrate Judge

17 – REPORT AND RECOMMENDATION